# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RENEE RIOS-O'DONNELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10 C 6219 |
| ) | |
| AMERICAN AIRLINES, INC. and ) | |
| ASSOCIATION OF PROFESSIONAL ) | |
| FLIGHT ATTENDANTS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Renee Rios-O'Donnell has sued the Association of Professional Flight Attendants (APFA) for breach of its duty of fair representation (DFR) and American Airlines, Incorporated (American) for breach of the collective bargaining agreement (CBA) to which APFA and American are signatories under the Railway Labor Act (RLA), 45 U.S.C. §152.[1] American and APFA have moved to dismiss Rios-O'Donnell's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court denies defendants' motions.

---

[1] Rios-O'Donnell also purports to sue under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Because the RLA applies to "carriers by air" such as American, the LMRA is inapplicable in this case. *Brady v. Trans World Airlines, Inc.,* 401 F.2d 87, 92 n. 7 (3d Cir. 1968); *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1274, 1283 (7th Cir. 1985) (noting that employers subject to the RLA cannot be sued under section 301 of the LMRA).

## Background

Rios-O'Donnell is an Illinois resident and former employee of American, a Delaware corporation with its principal place of business in Texas. APFA is a union that is the exclusive collective bargaining agent for flight attendants employed by American. *See* Am. Compl. ¶¶ 4-6. American hired Rios-O'Donnell as a flight attendant on September 26, 1984. *Id.* ¶ 7. She served as an American employee until American terminated her effective March 29, 2010. *Id.* With the exception of periods of time during which she worked in management, Rios-O'Donnell was a member of APFA throughout her employment with American. *Id.*

During Rios-O'Donnell's employment, American and APFA were signatories to a CBA. *Id.* ¶ 8. All APFA-affiliated flight attendants are intended third-party beneficiaries under the CBA. *Id.* The CBA provides that a flight attendant may have her union membership dues deducted from her earnings or pay the fees directly to the union. *Id.* ¶ 9. It also sets forth certain procedures that apply if a APFA-member flight attendant becomes delinquent in the payment of her dues. These procedures provide that a flight attendant may be discharged based on non-payment of dues. Specifically, Article 31 of the CBA states as follows:

> The Secretary/Treasurer of APFA shall notify the flight attendant, in writing, certified mail, return receipt requested, copy to the Vice President-Employee Relations of the Company, that s/he is delinquent in the payment of . . . membership dues, as specified herein and, accordingly, is subject to discharge as an employee of the Company. Such letter shall also notify the flight attendant that s/he must remit the required payment within thirty (30) days of the date of the mailing of the notice, or be subject to discharge.

> If upon the expiration of the thirty (30) day period, the flight attendant still remains delinquent, the President of APFA shall certify, in writing, to the Vice President-Employee Relations, copy to the flight attendant, that the flight attendant has failed to remit payment within the grace period allowed and is, therefore, to be discharged. The Vice President-Employee Relations shall then take proper steps to discharge such employee from the service of the Company.
>
> A flight attendant discharged by the Company under the provisions of this paragraph shall be deemed to have been discharged for cause within the meaning of the terms and provisions of this Agreement.

Am. Comp. ¶ 9. The CBA states that a discharge under Article 31 can be based only on the flight attendant's failure to pay membership dues and not on the denial or termination of union membership or any other ground. *Id.*

To contest a discharge under Article 31, a flight attendant must first submit a written request for review within the period of time specified in the agreement. *Id.* The flight attendant's immediate supervisor then reviews the request and renders a written decision within ten days. *Id.* "If the decision is not satisfactory to both the flight attendant and APFA, then either may appeal the grievance directly to the System Board of Adjustment [(Systems Board)], established under Article 29 of this Agreement, within ten (10) days from the date of the decision." *Id.*

APFA policy at the relevant time allowed flight attendants to pay their dues and fees using a "bankcard." *Id.* ¶ 10. Pursuant to this policy, in 2003 Rios-O'Donnell authorized APFA to charge her monthly dues to her bankcard whenever her paycheck from American was insufficient to cover the dues. *Id.* ¶ 11. Per Rios-O'Donnell's instructions, APFA charged her monthly dues to her bankcard for at least eighteen

months.  *Id.* ¶ 12.  In May 2005, unbeknownst to Rios-O'Donnell, APFA stopped accepting payment of her dues by bankcard.  *Id.*

Because Rios-O'Donnell's dues went unpaid, in June 2008 APFA began proceedings to terminate her employment pursuant to Article 31.  *Id.* ¶ 13.  APFA sent Rios-O'Donnell an alert letter dated June 13, 2008 advising her that she would be terminated unless she paid her back dues by July 14, 2008.  *Id.*  Due to a family emergency, Rios-O'Donnell never read the contents of this letter.  *Id.*  Rios-O'Donnell claims that she had no reason to believe that her dues were unpaid because she assumed that the union was charging her bankcard.  *Id.*

According to Rios-O'Donnell, APFA had a longstanding policy and practice of calling flight attendants, or having American do so, prior to the final deadline for payment specified in alert letters sent pursuant to Article 31.  *Id.* ¶ 14.  Pursuant to this policy, on July 8, 2008 APFA sent a letter to American asking it to contact all flight attendants (including Rios-O'Donnell) to whom APFA sent alert letters on June 13, 2008 and whose payment was due on July 14, 2008.  *Id.*  Additionally, pursuant to American's own internal policies, American's Manager of Employee Relations Vince Heyer advised APFA on July 9, 2008 that he had instructed these flight attendants' supervisors to contact the flight attendants prior to the payment deadline.  *Id.* ¶ 15.  Despite these policies and actions, Rios-O'Donnell's supervisor did not contact her until July 22, 2008, eight days after her payment deadline had passed.  *Id.* ¶ 16.  Moreover, when the supervisor left a voice mail message for Rios-O'Donnell that day, he told her that she still had fourteen days to pay her back dues.  *Id.*

Immediately after receiving her supervisor's voice mail message, Rios-O'Donnell called APFA to pay her dues. *Id.* ¶ 17. APFA's treasurer told Rios-O'Donnell that it was too late because the July 14, 2008 deadline had passed and refused to accept her payment. *Id.* Rios-O'Donnell also sent a letter to APFA on July 25, 2008 containing a cashier's check for the full amount of unpaid dues, but APFA refused to accept the payment. *Id*. ¶ 18.

On July 28, 2008, Rios-O'Donnell filed a grievance with her supervisor contesting her pending discharge pursuant to Article 31H(1) of the CBA. *Id.* ¶ 19. On August 1, 2008, her supervisor denied her grievance. *Id.* Rios-O'Donnell then appealed the denial of her grievance to the System Board pursuant to Article 31H(2). *Id.* ¶ 20. On March 29, 2010, the System Board issued a written opinion denying Rios-O'Donnell's appeal and her termination became immediately effective. *Id.* She filed her complaint on September 28, 2010.

## Discussion

In addressing a motion to dismiss, the Court accepts the plaintiff's allegations as true and draws reasonable inferences in her favor. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010); *Johnson v. Apna Ghar, Inc.*, 330 F.3d 999, 1001 (7th Cir. 2003). The Federal Rules of Civil Procedure require the plaintiff to provide "a short and plain statement" showing that she is entitled to relief. Fed. R. Civ. P. 8(a)(2). Though a complaint need not contain "detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the plaintiff must provide "enough facts to state a claim to

5

relief that is plausible on its face." *Id.* at 570. A complaint fails to state a plausible claim "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).[2]

**1.      Statute of limitations**

American and APFA first contend that Rios-O'Donnell's DFR claims are barred by the applicable statute of limitations. *See* American Br. at 4-7; APFA Br. at 5-8. Although the parties agree that the limitations period applicable to Rios-O'Donnell's RLA claims is six months from the date of accrual, *see United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1270 (7th Cir. 1985), they dispute when the statute of limitations began to run and whether tolling applies based on Rios-O'Donnell's pursuit of contractual remedies under Article 31 of the CBA.

The six-month limitations period applicable to a DFR claim under the RLA is the same as that applicable to an employee's hybrid section 301/DFR claim against his employer and union under the LMRA. *See id.* This limitations period begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have

---

[2] APFA attached the System Board's opinion and award to its brief, stating that the Court may consider it because it is subject to judicial notice. APFA Br. at 2 n.1. American also notes that, because the award was incorporated by reference into the complaint, it may be considered part of the pleadings. American Br. at 3 n.1. Rios-O'Donnell attached to her response several documents she presumably believes to be pertinent to the motion. She asserts that if the Court looks outside of the complaint, then it must treat defendants' motions as motions for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). The Court has excluded all materials that the parties attached to their pleadings. Because this decision is based on the pleadings alone, the motions are properly characterized as a motions to dismiss under Rule 12(b)(6).

discovered, the acts constituting the alleged violation." *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 914 (7th Cir. 1999) (citation and quotation marks omitted).

As a preliminary matter, APFA asserts that Rios-O'Donnell has alleged two separate duty of fair representation claims with distinct accrual dates for purposes of the statute of limitations. The first claim, APFA argues, is a claim against APFA alone that arises out of its alleged failure to adequately notify Rios-O'Donnell of her dues arrearage. The second claim, APFA contends, is a claim that APFA took an adversarial position against Rios-O'Donnell during her Article 31 grievance and thereby contributed to American's wrongful termination of her employment. According to APFA, the former claim accrued in July 2008 when Rios-O'Donnell realized that APFA did not properly notify her of her arrearage. The latter claim, it argues, accrued in August 2008 when Rios-O'Donnell realized that APFA would not represent her before the System Board. Rios-O'Donnell counters that her complaint asserts a single DFR claim that alleges a continuum of conduct. She also argues that her claim did not accrue (or, alternatively, that the statute of limitations on the claim was tolled) until the System Board reached its decision and her termination became final.

APFA is correct that Rios-O'Donnell appears to assert two types of DFR claims. One is a grievance-related claim. *See* Am. Compl. ¶ 25(c)-(e) (alleging that APFA refused to represent or assist Rios-O'Donnell in connection with her grievance and assumed an adversarial position against her). The other is a non-grievance-related claim involving APFA's conduct separate from, and prior to, Rios-O'Donnell's pursuit of her contractual remedies under the CBA. *Id.* ¶ 25(a)-(b) (alleging that APFA

7

discriminated against Rios-O'Donnell and treated her arbitrarily by not allowing her to pay her dues late and instructing American to terminate her despite failing to follow its own notice procedures). The Court therefore agrees that Rios-O'Donnell's DFR claims should be considered separately for statute of limitations purposes.

Rios-O'Donnell's allegations make clear that she was aware of the acts constituting APFA's alleged breach in July or August 2008. Despite this, the Court concludes that Rios-O'Donnell's DFR claims are timely because the limitations periods on the claims were tolled while she pursued contractual remedies before the System Board. The Seventh Circuit has held that the statute of limitations on a plaintiff's RLA-based DFR claim is tolled while the plaintiff pursues internal union remedies. *Frandsen v. Bhd. of Ry., Airline and S.S. Clerks, Freight Handlers, Express & Station Emps.*, 782 F.2d 674, 681-84 (7th Cir. 1986). This is so even if the plaintiff's pursuit of those remedies is ultimately found to have been futile. *Id.* at 684. APFA argues that the rule from *Frandsen* is inapplicable because Rios-O'Donnell sought to exhaust contractual remedies, not internal union remedies. APFA Reply at 7. The circuits that have addressed the issue, however, have all applied tolling or delayed accrual in cases where the plaintiff exhausted his contractual remedies before filing a DFR claim. *See, e.g.*, *Whittle v. Local 641, Int'l Bhd. of Teamsters, Chauffers, Warehousemen, and Helpers of Am.*, 56 F.3d 487, 489-90 (3d Cir. 1995); *Galindo v. Stoody Co.,* 793 F.2d 1502, 1509-10 (9th Cir. 1986); *Adkins v. Int'l Union of Elec., Radio & Mach. Workers*, 769 F.2d 330, 335-36 (6th Cir. 1985). This approach makes eminent sense, since—as American and APFA acknowledge—the Supreme Court has held that an employee

8

*must* exhaust his contractual remedies before pursuing such a claim in court. *See Clayton v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 451 U.S. 679, 685-687 (1981). Moreover, the Seventh Circuit in *Frandsen* recognized that tolling is warranted where "exhaustion is required by the circumstances of the case." *Frandsen*, 782 F.2d at 678. The Court is unpersuaded that the tolling rule from *Frandsen* is limited to cases in which an employee pursues internal union remedies, the exhaustion of which may not always be a necessary precursor to filing a lawsuit. Tolling is at least equally appropriate when a plaintiff pursues contractual remedies that must be exhausted before a court will hear the plaintiff's case.

Though the Seventh Circuit does not appear to have addressed whether tolling applies in this precise factual scenario, the Ninth Circuit dealt with a similar situation in *Galindo v. Stoody Co.,* 793 F.2d 1502 (9th Cir. 1986). In *Galindo*, the plaintiff presented two distinct DFR claims. One of these claims involved the union's handling of the plaintiff's contractual grievance. The other arose out of a non-grievance-related breach: the union's alleged failure to notify the plaintiff's employer that he was entitled to seniority in the event of layoffs. *See Galindo*, 793 F.2d at 1509-11. As in the present case, then, the plaintiff in *Galindo* presented both grievance- and non-grievance-related DFR claims. *Id.*

The court assessed each claim's accrual date separately. It found that the grievance-related claim accrued once the panel reached its decision. *Id.* at 1509. By contrast, the non-grievance claim accrued when the plaintiff knew about the breach. *Id*.

The limitations period on this claim, however, was tolled until the arbitration process ended. *Id.* The court summarized its holding in the following way:

> [A] fair representation claim based on how a grievance is presented to an arbitrator accrues when the employee learns of the arbitrator's decision. A fair representation claim not based on how a grievance is presented to an arbitrator is tolled while good faith attempts are made to resolve that claim through grievance procedures.

*Id.* at 1510. In other words, under *Galindo*, the limitations period on a plaintiff's DFR claim does not run while the plaintiff is pursuing contractual grievance procedures, regardless of whether the claim is grievance- or non-grievance-based.

This case bears strong similarities to *Galindo*. One of Rios-O'Donnell's DFR claims is based entirely upon APFA's conduct in relation to her pursuit of contractual remedies before the System Board—namely, its failure to represent her and its assumption of an adversarial position in those proceedings. More importantly, an arbitration decision in Rios-O'Donnell's favor would have resulted in the relief she seeks, since she would have kept her job and suffered no injury as a result of APFA's alleged breach. The Court therefore concludes that this claim did not accrue until the System Board reached its decision on March 29, 2010 and Rios-O'Donnell's termination became final. *Cf. Whittle*, 56 F.3d at 490.

Additionally, like the plaintiff in *Galindo*, Rios-O'Donnell has presented a non-grievance DFR claim by asserting that APFA failed to provide her with adequate notice and discriminated against her by not allowing her to pay her dues late. The Court agrees with the reasoning of the Ninth and Sixth Circuits and holds that this claim accrued when Rios-O'Donnell became aware of her injury in July 2008, but was tolled

10

until the System Board reached its decision.  *Cf. Galindo*, 793 F.2d at 1510-11; *Adkins*, 769 F.2d at 336.

In summary, the six-month statute of limitations on Rios-O'Donnell's DFR claims did not expire until after September 28, 2010, the day Rios-O'Donnell filed her complaint.  The Court concludes that Rios-O'Donnell's claims are timely.

**2.     Count one (DFR claims)**

Turning to the substance of Rios-O'Donnell's complaint, American and APFA argue that the DFR claims must be dismissed for three reasons.  First, they contend that Rios-O'Donnell has failed to allege facts sufficient to show that APFA breached its duty of fair representation.  Second, they assert that the System Board's decision bars Rios-O'Donnell from relitigating whether American breached the CBA by terminating her, and her inability to do so dooms her DFR claim.  Finally, they argue that Rios-O'Donnell has failed to allege facts sufficient to establish that American breached the CBA when it terminated her employment.

**a.     Failure to state a DFR claim**

American and APFA first assert that Rios-O'Donnell's allegations, taken as true, do not establish that APFA breached its duty of fair representation.  APFA Br. at 11-12.  In their view, APFA did not breach this duty by invoking a union security clause in the CBA and seeking Rios-O'Donnell's termination before and during the grievance proceedings.  Rios-O'Donnell counters that although APFA's mere invocation of the union security clause may not constitute a breach of its duty of fair representation, its

arbitrary and discriminatory treatment of Rios-O'Donnell before and during the System Board proceedings does constitute such a breach. Resp. to APFA at 7-9.

"It is axiomatic that the union enjoys broad authority in its role as the exclusive bargaining agent for a class of employees." *Thomas v. United Parcel Serv., Inc.*, 890 F.2d 909, 916 (7th Cir. 1989). As such, a union "owes a concommitant [sic] duty of fair representation to each of its members." *Id.* A union violates its duty to represent an employee fairly "if its actions are either arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). This rule "applies to all union activity." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991). Here, Rios-O'Donnell alleges the union treated her arbitrarily and discriminated against her. "[A] union's actions will only be deemed arbitrary if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." *Nemsky v. ConocoPhillips Co.*, 574 F.3d 859, 865 (7th Cir. 2009). "To prove arbitrary or discriminatory treatment, the plaintiff must show that the Union's conduct was intentional, invidious and directed at that particular employee." *Cannon v. Consol. Freightways Corp.,* 524 F.2d 290, 293 (7th Cir. 1975).

Rios-O'Donnell's complaint contains several specific allegations that give rise to a plausible inference that APFA's actions were arbitrary, discriminatory, or in bad faith. She asserts that both American and APFA had a longstanding policy and practice of personally contacting flight attendants before their dues payments became due under Article 31. Am. Compl. ¶¶ 14-16. Despite this, APFA failed to call Rios-O'Donnell or have American do so until July 22, 2008, several days after her final payment deadline

had passed. *Id.* ¶ 16. In light of this policy and APFA's failure to comply with it, Rios-O'Donnell contends that APFA's subsequent decision to direct American to terminate her was arbitrary. *Id.* ¶ 25(a). She also argues that APFA discriminated against her by refusing to accept her late tender of dues, even though it had allowed other flight attendants to pay their dues after a final deadline. *Id.* ¶ 25(b). Finally, she asserts that APFA's failure to represent her before the System Board, as well as its adoption of an adversarial position there, were arbitrary in light of the policies discussed above. *Id.* ¶¶ 25(c)-(e).

American and APFA persuasively argue that standing alone, APFA's mere decision to seek the discharge of a employee whose dues are delinquent should not give rise to a viable DFR claim. *See, e.g.*, *Brady*, 401 F.2d at 99 (noting that "healthy industrial relations cannot be preserved if unions are prevented from effective action to secure the prompt payment of dues where dues are required under a valid union security agreement"). Rios-O'Donnell, however, has alleged facts raising a plausible inference that APFA reached this decision in an arbitrary and discriminatory fashion. By asserting that APFA inexplicably failed to comply with its own internal policies and targeted her for harsher punishment than that received by other similarly situated workers, Rios-O'Donnell has stated a DFR claim.

### b. Finality of the System Board's decision

American and APFA next argue that Rios-O'Donnell cannot relitigate the System Board's finding that American did not breach the CBA. APFA Br. at 10-11; American Br. at 7-10. Rios-O'Donnell responds that the System Board's decision does not

preclude her from arguing that American violated the CBA because the System Board had no jurisdiction to consider her DFR claims and her allegations establish that APFA's breach of its duty of fair representation undermined the System Board proceedings. Resp. to APFA at 12.

Under the RLA, an award of the System Board is "final and binding." 45 U.S.C. § 153 First (m). An exception to this relitigation bar exists, however, in cases where "the union's breach of duty . . . seriously undermines the integrity of the arbitral process." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567 (1976); *see also Thomas*, 890 F.2d at 922 (same). In other words, Rios-O'Donnell will not be precluded from challenging the System Board's finding that American did not breach the CBA if she can show that APFA's breach of its duty of fair representation rose to this level. *See Barnett v. United Air Lines, Inc.*, 738 F.2d 358, 362 (10th Cir. 1984) (emphasis in original) ("If an employee can establish that his union breached its implied duty of fair representation, then even a *binding* decision of the board can be set aside if the breach seriously undermined the integrity of the arbitral process.").

As discussed above, Rios-O'Donnell has alleged that APFA's breach of its duty of fair representation hindered her ability to pursue her grievance before the System Board. Specifically, she asserts that APFA, after providing her with less notice of her arrearage than it provided to other employees and arbitrarily refusing her request to pay her dues late, actively opposed Rios-O'Donnell's grievance before the System Board in bad faith. Am. Compl. ¶¶ 25-26. Though somewhat thin, these allegations are sufficient to raise a plausible inference that APFA's breach significantly and unfairly

14

limited Rios-O'Donnell's ability to contest her discharge, and thus undermined the System Board proceedings as a whole. This is particularly so given that Rios-O'Donnell was powerless to challenge APFA's conduct during the System Board proceedings. *See Conley v. Gibson*, 355 U.S. 41, 44-45 (1957) (citing 45 U.S.C. § 153 First (I)) (holding that because the RLA "applies only to 'disputes between an employee or group of employees and a carrier or carriers,'" an adjustment board "has no power under . . . the [RLA] to protect them from" discrimination by their union); *Brady*, 401 F.2d at 93 (acknowledging that "the [RLA] does not authorize adjustment boards to hear an employee's dispute against his union."). The Court therefore concludes that, based on the allegations in Rios-O'Donnell's complaint, the exception recognized in *Hines* applies and the System Board's decision does not preclude Rios-O'Donnell from arguing that American breached the CBA when it terminated her employment.

### c. Failure to state a breach of contract claim

Additionally, American and APFA argue that Rios-O'Donnell's DFR claims must be dismissed because, even assuming that she is not precluded from arguing that American violated the CBA, she has not alleged facts sufficient to show that it did so. American Br. at 2; American Reply at 4-6.

To prevail on a hybrid DFR claim, an employee must prove that her union breached its duty of fair representation and her employer breached the collective bargaining agreement. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983); *Bell v. DaimlerChrysler Corp.*, 547 F.3d 796, 804 (7th Cir. 2008). As discussed above, Rios-O'Donnell is not barred from relitigating the second issue. She has alleged

that American failed to comply with a longstanding policy and practice of providing timely notice of a dues arrearage to its employees. American and APFA argue that this evidence cannot raise a plausible inference of breach, because the CBA contains a provision reciting American's notice obligations. The Supreme Court, however, has rejected this tunnel-vision approach to interpreting collective bargaining agreements. *See, e.g., Transp.-Commc'n Emps. Union v. Union Pac. R.R.*, 385 U.S. 157, 161 (1967) ("In order to interpret [a collective bargaining] agreement it is necessary to consider . . . the practice, usage and custom pertaining to all such agreements"); *see also Bhd. of Maint. of Way Emps. v. Atchinson, Topeka & Santa Fe Ry. Co.*, 138 F.3d 635, 641 (7th Cir. 1997) (quotation marks omitted) ("For collective bargaining agreements under the RLA, we must look beyond the document itself. We must look to the parties' practice, usage and custom."). Simply put, the Court is not limited to the four corners of the CBA in interpreting the parties' agreement.

The Court acknowledges that "extrinsic evidence cannot be used to contradict the express provisions of a written contract." *Id.* Rios-O'Donnell's allegations, however, are sufficient to raise a plausible inference that American's notice obligation under the CBA included, in practice, a duty to contact employees personally prior to the due date for late dues payments. *Cf. Fry v. Airline Pilots Ass'n, Int'l*, 88 F.3d 831, 836 (10th Cir. 1996) (quotation marks omitted, emphasis in original) (noting that "norms that the parties have created but have omitted from the collective bargaining agreement's *explicit* language" are part of the agreement). The Court therefore concludes that Rios-

16

O'Donnell has alleged facts sufficient to show that American breached the CBA by failing to notify Rios-O'Donnell of her arrearage before it became due.

### 3. Count two (breach of contract claim)

As noted above, Rios-O'Donnell has alleged facts sufficient to raise a plausible inference that American breached the CBA. She has asserted a distinct breach of contract claim against American and purports to sue under section 301 of the LMRA, which provides a cause of action for breach of contract against an employer. *See* Am. Compl. ¶¶ 29-31; Response to APFA Mot. at 1; *Frandsen*, 782 F.2d at 684. In this case, however, the RLA—not the LMRA—applies. *See supra* p. 1 n.1; *Frandsen*, 782 F.2d at 684 (recognizing that "section 301 of the LMRA, 29 U.S.C. § 185 . . . does not apply to employers . . . who are subject to the [RLA]."). The RLA does not provide a jurisdictional basis for an employee to assert a direct claim for breach of contract against her employer. *Steffens*, 797 F.2d at 445 n.2; *Dement v. Richmond, Fredricksburg & Potomac R.R. Co.*, 845 F.2d 451, 457 n.12 (4th Cir. 1988).

Despite this, an employee asserting an RLA-based DFR claim against her union can join her employer as a defendant in that claim and in doing so "assert that the collective bargaining agreement has been breached," so long as the employee "can allege that the employer's conduct somehow contributed to the union's breach" of its duty of fair representation. *Steffens*, 797 F.2d at 445; *Frandsen*, 782 F.2d at 684 (recognizing that in such cases, "the allegation . . . is merely that [the employer] is a party to [the union's] breach."). In such cases, the employer "is a defendant . . . solely to permit the district court to award the plaintiff-employee full relief from the results of

17

the union's breach of its obligations as his collective bargaining representative." *Id.* at 686. In other words, employees often seek reinstatement as a remedy for the union's breach, and only the employer can reinstate a former employee.[3]

The apparent absence of a jurisdictional basis for Rios-O'Donnell to assert a breach of contract claim against American gives the Court some pause in considering whether to dismiss count two. The parties, however, did not raise this issue in their briefs. The Court therefore declines to dismiss count two on these grounds at this time. *See Frey v. E.P.A.*, 270 F.3d 1129, 1132 (7th Cir. 2001) (quotation marks omitted) (warning that "*sua sponte* dismissals without prior notice or opportunity to be heard are hazardous," and "unless the defect is clearly incurable a district court should grant the plaintiff leave to amend, allow the parties to argue the jurisdictional issue, or provide the plaintiff with the opportunity to discover the facts necessary to establish jurisdiction"). If American and APFA believe that count two is subject to dismissal for lack of subject matter jurisdiction, they may raise the issue in a procedurally appropriate motion.

Jurisdictional issues aside, the Court concludes that Rios-O'Donnell has alleged facts showing that American's conduct "somehow contributed to [APFA's] breach," and has therefore stated a DFR claim against American as well as APFA. *Steffens*, 797 F.2d at 445. Her complaint alleges that American and APFA had overlapping policies requiring them to notify flight attendants personally of their dues delinquencies. Am. Compl. ¶ 16. She also asserts that American failed to fulfill this duty despite the fact

---

[3] Rios-O'Donnell has sought reinstatement in connection with her claims. *See* Am. Compl. at 11.

that APFA asked sent a written request to American on July 8, 2008 asking the company to contact Rios-O'Donnell. *Id.* ¶ 14. In short, Rios-O'Donnell has pled facts raising a plausible inference that American's own misconduct contributed to APFA's alleged breach of its duty of fair representation—namely, its failure to provide her with adequate notice of her dues arrearage. Therefore, Rios-O'Donnell may join American as a defendant in her DFR claim against APFA. The Court will grant her leave to amend count two of her complaint accordingly.

## Conclusion

For the reasons stated below, the Court denies defendants' motions to dismiss [docket nos. 15, 22]. The Court grants Rios-O'Donnell leave to amend her complaint to replace her breach of contract claim against American with a DFR claim. The case is set for a status hearing on September 7, 2011 at 9:30 a.m. for the purpose of setting a discovery schedule and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 24, 2011