IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RENEE RIOS-O'DONNELL, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 10 C 6219 |
| AMERICAN AIRLINES, INC., and ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Renee Rios-O'Donnell brought this suit under the Railway Labor Act (RLA), 45 U.S.C. § 152, against American Airlines, Inc. (American), her former employer, and the Association of Professional Flight Attendants (APFA), the union that represents American flight attendants, in connection with her dismissal from American in March 2010. She contends that APFA breached its duty of fair representation to her and that American breached its collective bargaining agreement with APFA. American and APFA have each moved for summary judgment. For the reasons stated below, the Court grants both defendants' motions.

### Background

The Court previously denied defendants' motion to dismiss Rios-O'Donnell's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Rios-O'Donnell v. Am. Airlines, Inc.*, 837 F. Supp. 2d 868 (N.D. Ill. 2011). The Court assumes familiarity with

that decision. The Court takes the following facts from the parties' statements of uncontested facts and the exhibits they have submitted in support of their respective positions. In deciding on a motion for summary judgment, the Court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Trinity Homes LLC v. Ohio Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010).

Rios-O'Donnell worked as a flight attendant for American from September 1984 until American terminated her effective March 29, 2010. Except for a period of time during which she worked in management, Rios-O'Donnell was a member of APFA throughout her employment with American.

American and APFA are signatories to a collective bargaining agreement (CBA) that govern the terms and conditions of the employment of American's flight attendants. The CBA requires all American flight attendants who are assigned to "line duty" to pay membership dues to APFA as a condition of employment. If a flight attendant becomes delinquent in his or her dues, Article 31(F) of the CBA requires APFA to notify the employee in writing (via a certified, return-receipt letter) that the flight attendant is delinquent and "must remit the required payment within thirty (30) days of the date of the mailing of the notice, or be subject to discharge." American Ex. D at 14. If no payment has been made after thirty days, APFA will certify the employee's delinquency to American, at which point American is required to "take proper steps to discharge such employee from the service of the Company." *Id*. at 15.

To contest the termination, a flight attendant must submit a request for review to her immediate supervisor, who reviews the grievance and renders a written decision. "If

the decision is not satisfactory to both the Flight Attendant and APFA, then either may appeal the grievance directly to the System Board of Adjustment, established under Article 29 of this Agreement, within ten (10) days following the receipt of the grievance." *Id.*

In June 2003, Rios-O'Donnell gave APFA permission to charge her "bankcard"—a debit card linked to her bank account—for the monthly union dues whenever her paycheck from American was insufficient to cover them. The bankcard that Rios-O'Donnell originally provided to APFA had an expiration date of April 30, 2005. Rios-O'Donnell contends that her card continued to be valid for charges beyond that date and says that she called APFA's treasurer Catherine Lukensmeyer in May 2005 to inform her of the card's continuing validity. Lukensmeyer testified in her deposition that Rios-O'Donnell did call her "to set something up, and [she] sent her over to the dues clerk." Lukensmeyer Dep. at 32. Lukensmeyer could not recall whether Rios-O'Donnell ever personally gave her a card number but stated that if Rios-O'Donnell had done so, she would not have input the information into APFA's electronic files. It is undisputed that Rios-O'Donnell's bankcard was not charged for any APFA dues after April 2005.

APFA contends that from May 2005 until June 2008, it mailed Rios-O'Donnell monthly invoices listing the amount that owed for outstanding dues enclosed in an envelope marked, "IMPORTANT: INVOICE ENCLOSED." APFA Ex. 7 at 3. Rios-O'Donnell testified that she did not open her mail or take care of the finances—her husband, Daniel O'Donnell, took care of these responsibilities at the time—and thus she was unaware that APFA was no longer charging her bankcard for her monthly dues.

On June 13, 2008, APFA sent Rios-O'Donnell an alert letter by registered first-class mail. The letter stated:

> You are hereby notified that you are more than 60 days delinquent in the payment of agency fees/membership dues to [APFA] and that **UNLESS YOU RESPOND TO THIS NOTICE IN THE MANNER SPECIFIED BELOW, APFA WILL ASK AMERICAN AIRLINES TO DISCHARGE YOU IN ACCORDANCE WITH ARTICLE 31 OF THE [CBA] BETWEEN AMERICAN AIRLINES AND APFA**.

APFA Ex. 12 at 37 (emphasis in original). The letter listed the months for which APFA had not received payment, totaling $794.50 in outstanding dues, and required Rios-O'Donnell to respond by July 14, 2008 to avoid discharge. It is undisputed that Rios-O'Donnell received the letter on June 17, 2008, and the certified mail receipt she signed was subsequently returned to APFA. *Id.* at 42. She contends, however, that she did not actually read the letter due to an ongoing family emergency and that she subsequently misplaced it.

Mr. O'Donnell testified during his deposition that "at some point in the first two weeks of July," an APFA representative called Rios-O'Donnell's home phone and left a message on the answering machine "about a dues arrearage." O'Donnell Dep. at 9. He stated that he forgot to tell his wife about the message until after the payment deadline had passed. On July 8, 2008, Rosemary Cooper, an APFA employee, sent Vincent Heyer, an American employee, an e-mail with a list of flight attendants who had received alert letters listing a July 14 payment deadline. The e-mail stated that the employees "need[ed] to be contacted this week." APFA Ex. 12 at 76. Heyer informed Rios-O'Donnell's immediate supervisor, Marco Echevarria, of her arrearage and asked him to contact her, but Echevarria did not call Rios-O'Donnell until after the July 14 deadline had already passed.

4

Rios-O'Donnell did not respond to APFA's alert letter, and on July 18, 2008, APFA asked American to terminate her in accordance with the CBA. On July 22, American sent Rios-O'Donnell a letter notifying her that it was terminating her employment effective in fourteen days. Echeverria also called Rios-O'Donnell to notify her of the letter. American admits that Echeverria erroneously told Rios-O'Donnell that she still had one week to pay the outstanding dues but states that he corrected his mistake that same day when he read her the termination letter over the phone. Rios-O'Donnell contends that Echeverria's phone call was the first time she learned of any outstanding dues. Rios-O'Donnell sent a check to APFA for the entire amount owed, but APFA refused to accept the check, telling her that it could not accept payment past the final deadline.

Rios-O'Donnell timely submitted a request for review of her termination. On August 1, 2008, Echeverria denied Rios-O'Donnell's appeal and sent her a letter notifying her of his decision. She filed an appeal of the decision to the System Board of Adjustment (System Board). A three-day hearing was held before an arbitrator who issued an opinion and award on March 29, 2010, concluding that Rios-O'Donnell's termination was proper under Article 31 of the CBA. Rios-O'Donnell subsequently filed this lawsuit.

**Discussion**

Summary judgment is appropriate when the evidence demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Bielskis v. Louisville Ladder, Inc.* 663 F.3d 887, 898 (7th Cir. 2011). The nonmoving party cannot rest on its pleadings alone and must

"submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (internal quotation marks omitted).

Rios-O'Donnell first contends that APFA breached the duty of fair representation that it owed to her in four ways: (1) APFA failed to provide her actual notice of her dues arrearage, contrary to its claimed practice of personally contacting delinquent flight attendants prior to any final payment deadline; (2) it did not provide her adequate notice that it was no longer charging her bankcard for the monthly dues she owed the union; (3) it refused to accept her late tender of dues, despite its claimed practice of allowing other similarly situated flight attendants to pay their dues after their final payment deadline had expired; and (4) its refusal to represent her in the arbitration hearing before the System Board was arbitrary "in light of the above policies as well as its complicity in not charging [her] bankcard, which was authorized and valid at all relevant times." Pl.'s Joint Resp. at 9. Rios-O'Donnell also asserts a "hybrid" claim against both APFA and American, alleging that American's failure to adhere to its own practices of actual notice contributed to APFA's breach of its duty, causing a breach of the CBA between American and APFA.

I. **APFA's duty of fair representation**

"National labor policy has been built on the premise that by pooling their economic strength and acting through a labor organization freely chosen by the majority, the employees of an appropriate unit have the most effective means of bargaining." *Nemsky v. ConocoPhillips Co.*, 574 F.3d 859, 865 (7th Cir. 2009). Along with this broad grant of powers, federal labor law imposes upon a union a duty to

represent each of its members fairly and affords union members an implied right of action against their union for breach of that duty. *Id.*; *Steffens v. Bhd. of Airline & S.S. Clerks, Freight Handlers, Express & Station Emps.*, 797 F.2d 442, 445 (7th Cir. 1986) ("The RLA affords an employee an implied right of action against his union for breach of the duty of fair representation."). This duty "includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967); *Ooley v. Schwitzer Div., Household Mfg., Inc.*, 961 F.2d 1293, 1302 (7th Cir. 1992) ("The three separate levels of inquiry under this standard are as follows: (1) did the union act arbitrarily; (2) did the union act discriminatorily; or (3) did the union act in bad faith.").

### A. Notice of outstanding dues

Rios-O'Donnell first contends that APFA breached its duty of fair representation by failing to provide her actual notice of her dues arrearage. She argues that APFA had a practice of personally contacting delinquent flight attendants about their outstanding dues before the final deadline for paying their dues passed.

Rios-O'Donnell admits that APFA sent her written notice through a certified letter, as required by Article 31 of the CBA, and that she signed for the letter at the post office. She says that she did not read the letter because of pressing family issues and that she subsequently misplaced the letter. Additionally, Mr. O'Donnell testified that an APFA representative called their home prior to the July 14 deadline, asking Rios-O'Donnell to call the union to discuss her dues arrearage. Rios-O'Donnell admits that APFA made

7

this phone call but insists that her husband did not relay the message to her and instead deleted the message from their answering machine.

Rios-O'Donnell contends that these efforts to contact her were insufficient because they did not amount to the "personal contact" that APFA in practice provided to its other members. According to Rios-O'Donnell, when APFA failed to actually notify her of her outstanding dues, it discriminated against her.

Rios-O'Donnell has failed to show that APFA had any policy or practice of providing actual notice to delinquent flight attendants via personal contact. Juan Barrera, APFA's treasurer at the time Rios-O'Donnell was fired, testified that he would "try to call flight attendants to tell them of their delinquent situation" if time permitted. Barrera Dep. at 70. Catherine Lukensmeyer, APFA's previous treasurer, testified that she would call delinquent flight attendants the weekend before the final payment deadline to tell them the consequences if they did not pay. Lukensmeyer also testified she would occasionally deliver a notice letter to a flight attendant or collect outstanding dues in person, but that these decisions were not a policy—only "practices that [she] employed to help [her] get dues." Lukensmeyer Dep. at 9. Rios-O'Donnell has offered no evidence beyond these statements.

The most that this evidence establishes is that APFA had a practice of making telephone calls to its delinquent members prior to the final deadline for payment— precisely as it did in this instance. Mr. O'Donnell's failure to relay APFA's message to Rios-O'Donnell cannot plausibly be construed as a failure *by AFPA* to adhere to its practices. Moreover, Rios-O'Donnell admits that she actually received the certified letter from the union and personally signed the certification receipt, which was then sent

8

back to APFA. Thus as far as APFA knew, Rios-O'Donnell did receive actual notice. Rios-O'Donnell did not in fact read the letter, but "the consequences of her failure to do so are of her own making." *Jolicoeur-Vasseur v. Ass'n of Prof'l Flight Attendants*, 405 Fed. Appx. 66, 70 (7th Cir. 2010) (unpublished); *cf. Ho v. Donovan*, 569 F.3d 677, 680 (7th Cir. 2009) ("The Constitution does not require that an effort to give notice succeed.").

APFA provided the notice required by Article 31 of the CBA and complied with any claimed informal practice by calling Rios-O'Donnell's home telephone to discuss her outstanding dues. Rios-O'Donnell has produced no other evidence to establish that the union regularly took any additional measures to inform its members of outstanding dues. Thus there remains no genuine issue of material fact regarding whether APFA breached its duty of fair representation in providing Rios-O'Donnell adequate notice of her outstanding dues.

### B. Notice that APFA was not charging Rios-O'Donnell's bankcard

Rios-O'Donnell next contends that APFA violated its duty of fair representation by failing to notify her that it was no longer charging her dues to her bankcard. This contention lacks merit. It is undisputed that APFA notified Rios-O'Donnell each month of her outstanding dues. Specifically, APFA's files indicated that Rios-O'Donnell's bankcard expired in April 2005. Every month following that date, APFA sent an invoice to Rios-O'Donnell's home, listing the amount she owed for dues. The invoices were marked "IMPORTANT: INVOICE ENCLOSED." Moreover, the certified letter that Rios-O'Donnell signed for in June 2008, giving her thirty days to respond, detailed each month that the union had not received payment and listed the total amount owed.

9

Rios-O'Donnell testified that she did not receive any of the monthly invoices—her husband regularly destroyed all mail from APFA without reading it—and she did not read the certified letter. Her failure to read these repeated notices is regrettable, but it does not give her a basis for a viable claim against APFA. Once a union has informed a member of her responsibility to pay dues within prescribed time limits—as AFPA did here—the employee is responsible for ensuring that her dues are timely paid. *See Joliecouer-Vasseur*, 405 Fed. Appx. at 70 ("As in the traditional rules for service of process, the notice provided by the union was sufficient because it was reasonably calculated to apprise [her] . . . that the union was trying to collected unpaid dues."); *Larkins v. NLRB*, 596 F.2d 240, 245 n.5 (7th Cir. 1979) ("[T]he employee [is] expected only to be sure that his dues were deducted, and if not, to tender the dues himself.").

Rios-O'Donnell has not produced any evidence that APFA provided her with less notice than it did other similarly situated employees or that its notice was in the least bit insufficient. Accordingly, APFA did not discriminate against Rios-O'Donnell or otherwise breach its duty of fair representation by failing to provide actual notice that it was no longer charging her bankcard for her monthly dues.

### C. APFA's refusal to accept Rios-O'Donnell's outstanding dues

Rios-O'Donnell next contends that APFA discriminated against her when it refused to accept her payment for the outstanding dues once the deadline had passed. A union is entitled to reject a payment of back dues tendered by a member once the union has properly invoked its security clause. *Larkins*, 596 F.2d at 244–45. At the same time, however, "a union seeking to enforce a union security clause has a fiduciary duty to deal fairly with the employees against whom the union seeks to enforce the

clause." *Prod. Workers Union of Chicago & Vicinity, Local 707 v. NLRB*, 161 F.3d 1047, 1052 (7th Cir. 1998). Rios-O'Donnell contends that APFA violated this duty when it refused to accept her payment of delinquent dues past the deadline noted in the alert letter.

Rios-O'Donnell has identified two employees who were allowed to make payments past the deadlines listed in their alert letters: Claire Cross and Jeanine Eldridge Adams. Rios-O'Donnell has failed to provide evidence, however, from which a fact finder reasonably could find her to be similarly situated to either of these employees. At Rios-O'Donnell's arbitration hearing, Cross testified that when she received APFA's alert letter, she spoke with her supervisor at American, who told her: "don't worry about it." APFA Ex. 12 at 820. APFA explained in its brief that it chose to rescind its termination request and accept Cross's payment after the final deadline because she had relied on her supervisor's erroneous instructions prior to that deadline. Rios-O'Donnell, however, does not claim to have spoken to anyone at American until after APFA had already requested her termination. Thus in contrast to Cross, Rios-O'Donnell's non-payment could not have been based on any erroneous information from American. And although American admits that Echeverria gave Rios-O'Donnell incorrect information when he first spoke with her on July 22, by then the deadline had already passed, and American had already terminated her.

Adams testified at Rios-O'Donnell's arbitration hearing that she, too, paid her arrearage after the deadline noted on her alert letter. Adams never picked up or signed for the certified letter APFA sent to her, however, and thus she did not receive the notice required by Article 31 of the CBA. If APFA had requested Adams's termination

without receiving a certified mail receipt signed by Adams, it arguably would have been in violation of the CBA. Unlike Adams, Rios-O'Donnell signed the certified mail receipt and admits receiving the letter.

Rios-O'Donnell has presented no other evidence of discrimination. No reasonable jury could find that APFA violated its duty of fair representation when it refused to accept Rios-O-Donnell's late payment of outstanding dues.

### D. APFA's refusal to represent Rios-O'Donnell in arbitration

Finally, Rios-O'Donnell contends that APFA breached its duty of fair representation when it refused to represent her in the Article 31 hearing. APFA requested that American terminate her because of her failure to make timely payment of her dues, and American complied with APFA's request. Rios-O'Donnell argues that because APFA was to blame for her delinquent dues, its failure to represent her in the grievance procedure outlined in Article 31 of the CBA was arbitrary. "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." *McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 613 (7th Cir. 2001) (internal quotation marks omitted).

APFA complied with the CBA and followed its own procedures throughout every step of its dealings with Rios-O'Donnell. APFA sent her monthly invoices detailing the amount that she owed. It sent her a certified letter, notifying her of the total amount that she owed the union and the consequences that would occur if she did not respond to the letter within thirty days. Shortly before the July 14 final deadline, an APFA representative called her at home and left her a message to call the union about her

outstanding dues. When she again failed to respond and the deadline passed, it requested that American terminate her. As the Supreme Court has repeatedly noted, the RLA permits a union to make such a request pursuant to section 152 of the RLA, which allows the union "to require all employees in the relevant bargaining unit to join the union as a condition of continued employment." *Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Express & Station Emps.*, 466 U.S. 435, 438 (1984); *see also Ry. Emp.'s Dep't v. Hanson*, 351 U.S. 225, 238 (1956) (finding section 152 of the RLA constitutional).

Given that APFA's request for her discharge was proper under the RLA and arose from her dealings vis-à-vis the union, it would make no sense to impose upon the union an obligation to represent her in a subsequent arbitration contesting her dismissal. *Cf. Vaca*, 386 U.S. at 191 ("[W]e do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement."). As Rios-O'Donnell well knew, APFA would have faced an inherent conflict of interest in representing her, as its representation necessarily would have entailed arguing that its request to terminate her had been improper. Far from being "far outside a wide range of reasonableness," *McLeod*, 258 F.3d at 613, APFA's decision not to represent her in the arbitration was both logical and understandable.

That aside, there is no evidence to suggest that Rios-O'Donnell ever expressly asked APFA to represent her in the hearing. Furthermore, she retained independent counsel within days of learning that American had terminated her employment, and she

continued to have her own counsel throughout the arbitration proceedings. She has offered no evidence that this prejudiced the prosecution of the grievance in the least.

In sum, no reasonable jury could find that APFA failed to fairly represent Rios-O'Donnell in any of the ways she contends. Summary judgment in APFA's favor is therefore appropriate regarding her claim for breach of the duty of fair representation.

## II. "Hybrid" claim

Rios-O'Donnell's second claim is a "hybrid" claim against both American and APFA. Although a Court typically lacks jurisdiction to hear a claim by an employee against her employer under the RLA, an employee may join her employer in an action under the RLA for breach of the duty of fair representation and "assert that the collective bargaining agreement has been breached if [she] can allege that the employer's conduct somehow contributed to the union's breach" of its duty of fair representation. *Steffens*, 797 F.2d at 445 (plaintiffs' allegation that the union colluded with the employer to deprive plaintiffs of their contract rights sufficiently stated a claim under the RLA for breach of the duty of fair representation); *see also Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 608 (8th Cir. 2004) ("The hybrid exception applies where there are good faith allegations and facts . . . indicating collusion or otherwise tying the [employer] and the union together in allegedly arbitrary, discriminatory, or bad faith conduct amounting to a breach of the duty of fair representation (internal quotation marks omitted)).

The Court need not, however, address defendants' arguments attacking Rios-O'Donnell's hybrid claim. Rios-O'Donnell has failed to show that APFA breached its duty of fair representation. For this reason, she cannot prevail on her hybrid claim as a matter of law. Summary judgment in favor of the defendants is therefore appropriate.

## Conclusion

For the reasons stated above, the Court grants APFA's motion for summary judgment [docket no. 62] and American's motion for summary judgment [docket no. 75]. The Clerk is directed to enter judgment in favor of the defendants.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 10, 2013